PORTER, Administrator, Office of Price Administration, v. PHOENIX CHAIR CO.

Civil Action No. 1923.

District Court, E. D. Wisconsin.

Sept. 24, 1946.

Kenneth J. Marks, Sp. Trial Atty., of Chicago, Ill., and John W. Emmerling, Local Dist. Trial Atty. (for O.P.A.), of Milwaukee, Wis., for plaintiff.

George R. Currie and Jacob Federer, both of Sheboygan, Wis., for defendant.

DUFFY, District Judge.

The issue to be here decided is whether defendant is required under MPR 188 to obtain a special price authorization as to sales made by it to Emblem Manufacturing Company (hereinafter called "Emblem") during the period May 5, 1944, to December 30, 1944.

Defendant is a manufacturer of furniture having in recent years annual sales of approximately $1,000,000. During the base period of March, 1942, the bulk of its sales was made to retailers. During said month, however, it made sales to Emblem totaling $10,307.65. All of such merchandise was drop shipped to the Byrne Organization for delivery on government contracts which the Byrne Organization at that time had with the armed forces. On these sales to the government a discount of 2%—10 days, or 1%—30 days was allowed. Other than that, discounts were not granted by the defendant.

From January 1, 1944, to December 30, 1944, the last date of any sale to Emblem, defendant sold to Emblem $46,463.01 worth of its regular line of merchandise and $40,992.26 worth of exclusive items of furniture, all of which was drop shipped to retail customers, and also sold to Emblem $14,487.54 worth of merchandise which was drop shipped to United States government agencies. Compared with its total volume of sales, the proportion of defendant's sales to Emblem during the period here involved was about the same as in March, 1942.

In March, 1942, defendant made a sale to W. W. Weiss and Company amounting to $620. Weiss and Company sold the furniture thus purchased from the defendant to the Monarch Store Fixture Company in Toledo, Ohio, which in turn sold it to a hotel in Sandusky, Ohio. This merchandise was drop shipped and the sale was made at the regular list price of the defendant, being the same price that any other retailer would have paid.

Plaintiff asks this court to issue a mandatory injunction compelling defendant to file an application with O.P.A. asking it to fix a rate of discount which defendant should have granted to Emblem during the period

768

here in question. Plaintiff also seeks treble damages to be computed after such rate of discount has been ascertained.

Section 1499.153(a) of the regulation provides:

"The maximum price for any article which was delivered or offered for delivery in March 1942, by the manufacturer shall be the highest price charged by the manufacturer during March 1942 . . . for the article."

Section 1499.163 provides: "(2) 'Highest price charged during March 1942' means (1) the highest price which the seller charged to a purchaser of the same class for the delivery of the article or material during March 1942 * * * (4) 'Purchaser of the same class' and 'class of purchaser' refers to the practice adopted by the seller in setting different prices for commodities for sales to different purchasers or kind of purchasers (for example, manufacturer, wholesaler, jobber, retailer, government agency, public institution, individual consumer), or for purchasers located in different areas or for different quantities under different conditions of sale."

The administrator contends that during the period March 5, 1944, to December 15, 1944, defendant's sales to Emblem which were drop shipped to retailers were sales to a customer belonging to a class other than was established in March, 1942. The administrator insists that the drop shipments to government agencies on goods sold to Emblem in the base period of March, 1942, is an entirely different classification than the drop shipments to retailers in the period in question. If the administrator is correct, then it follows that under the regulation defendant was obligated to apply for a maximum price for this class of purchaser under the Fourth Pricing Method.

■ We are admonished by the decision of the Supreme Court in Bowles v. Seminole Rock and Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700, to give "controlling weight" to administrative interpretations of the regulation unless plainly erroneous or inconsistent with the regulation. O.P.A. release, T-1809, issued March 3, 1944, is such an interpretation, the pertinent paragraphs of which are:

"1. Manufacturers may not 'establish' new jobbers so as to increase prices to their customers.

"2. Manufacturers may not charge jobbers the same price they charge retailers, unless they were doing so in March 1942 on the same type of merchandise under the same conditions of sale. Thus, they must allow former salesmen, sales agents, and others who are now jobbing their lines, the proper discounts for the type of jobber they are.

"3. Manufacturers must apply to O.P. A., Washington, D. C., for specific ceilings on sales to jobbers when they were not selling to this type of jobber in March 1942. Applications must be made under the Fourth Pricing Method of MPR 188."

A "new jobber" could of course be a person or company with whom the manufacturer dealt in March, 1942, if the type of merchandise or the conditions of sale were different. Here the type of merchandise was the same but the conditions of sale were quite different.

In March, 1942, defendant did not sell jobbers who sold to retail dealers. At that time there was no intermediate jobber step in the distribution between defendant as manufacturer and his retail customers. Emblem made no sales to retail dealers in March, 1942, and was not competing with defendant's salesmen for any retailer trade. But in the period in question in 1944 Emblem was in fact selling to retailers. Even though defendant claims it did not refuse to sell directly to retailers, it cannot escape consideration of the fact that during that period, thirteen former retail customers were buying from defendant, through Emblem, at prices higher than they formerly paid in their direct transactions.

Defendant accomplished indirectly what it could not do directly. It could not increase its profits by raising prices, but it achieved this result by decreasing costs.

Mr. Samson, the president and general manager of plaintiff, on December 17, 1943, wrote the following concerning the advantages of jobber distribution:

"First, more intensive coverage; next, a concentration of responsibility for prompt payment of accounts—the elimination of petty claims for adjustment, also the possibility of building short lines that can be produced economically in volume, * * *

"Ours has been a wasteful distribution which, of necessity, has had to be added to the cost—coverage of the field has been done poorly—has been duplicated—the representative of one good jobber carrying a general line could serve a dealer more efficiently than any given number of salesmen carrying individual lines—shipments could be consolidated, bookkeeping simplified—there are many other advantages which we can discuss. * * *"

Because some retailers who formerly purchased direct from defendant were required to purchase from Emblem at increased prices, this operated as an inflationary force and was a violation of the regulation.

I conclude that Emblem in 1944 was a different class of purchaser than in March, 1942, and that consequently defendant was required by the regulation to apply for a maximum price for this class of purchaser pursuant to the Fourth Pricing Method.

The single sale in March, 1942, made by defendant to Weiss, a manufacturer's agent, can be reconciled with this reasoning, for it was merely a sale of an institutional line of furniture and in fact was little more than an accommodation sale to a seller of the same type of furniture for commercial use. In my opinion this sale cannot be considered to set the pattern for defendant's later sales to Emblem which were to be drop shipped to various retailers.

Judgment may go for the plaintiff. After the rate of discount has been ascertained, single damages may be computed.